**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Crystal Lindley, | : | Case No. 3:08-CV-1159 |
| Plaintiff, | : | |
| v. | : | **MEMORANDUM DECISION AND ORDER** |
| Commissioner of Social Security, | : | |
| Defendant. | : | |

Plaintiff seeks judicial review, pursuant to 42 U. S. C. § 405(g), of Defendant's final determination denying her claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (Act), 42 U. S. C. §§ 416 (i) and 423. Pending are the parties' Briefs on the Merits and Plaintiff's Reply Brief[1] (Docket Nos. 14, 17, & 18). For the reasons that follow, this case is remanded to the Commissioner pursuant to sentence four.

## I. PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB on February 27, 2002, alleging that she had been disabled since September 8, 2001 (Tr. 76-78). Upon denial of the application, both initially and upon reconsideration, Plaintiff requested a hearing, *de novo*, before an ALJ (Tr. 67-70, 72-75). A hearing was conducted on February 17, 2004 before ALJ Dennis R. Kramer. Plaintiff, represented by counsel, and VE Edwin Yates appeared and testified (Tr. 442). On December 23, 2005, the ALJ rendered an unfavorable decision (Tr. 424-432). The Appeals Council vacated the ALJ's decision and remanded

---

[1] The original transcript of proceedings was misplaced or lost. A telephone conference was conducted during which Counsel for both parties stipulated to the reproduction and filing of the reproduced transcript by the United States Attorney's office.

the case to the ALJ on April 26, 2006 (Tr. 418-420).

On September 6, 2006, ALJ John Pope conducted a hearing at which Plaintiff, represented by counsel, and VE Joe Havranek appeared and testified (Tr. 480). On October 28, 2007, the ALJ rendered an unfavorable decision finding that Plaintiff was not disabled under Title II of the Act (Tr. 15-23). The Appeals Council denied review on March 19, 2008, rendering the ALJ's decision the final decision of the Commissioner (Tr. 6-8). Plaintiff then filed a timely action in this Court seeking judicial review of the Commissioner's unfavorable decision.

## II. FACTUAL BACKGROUND

A.   *The Hearing conducted on June 22, 2004[2].*

   1.   *Plaintiff's Testimony*

Plaintiff, a high school graduate, was 4'11" tall and weighed 135 pounds. She was a divorced mother residing with her two daughters. In 2002, Plaintiff began and continued to receive long-term benefits of about $1,564 monthly (Tr. 451-452).

Since 1986, Plaintiff was considered a casual employee, working for five to seven months at a time. She was last employed in this capacity in September 2001(Tr. 453). She stopped working because the employer could not accommodate the restrictions resulting from her impairments. In particular, she could not push, pull, squat or use her right hand (Tr. 452).

Plaintiff was diagnosed with and/or treated for symptoms related to thoracic outlet syndrome in her right shoulder, bilateral carpal tunnel, bilateral tendinitis, thoracic outlet syndrome, fasciitis, shoulder and lower back pain, asthma, allergies, anemia and a reconstructed bowel (Tr. 452, 454, 460-

---

[2] A hearing was initially scheduled on February 17, 2004. Plaintiff's counsel, Vernos Williams, appeared. Plaintiff did not. A show cause order issued and a second hearing was scheduled (Tr. 445, 446).

461).

The development of thoracic outlet syndrome in her right shoulder occurred after she suffered a contusion to the back of her head (Tr. 454, 455). The resulting symptoms were treated with physical therapy and medication (Tr. 455, 464).

Although Plaintiff underwent a carpal tunnel release in 1986, she could button clothes, zip a jacket and pick up coins (Tr. 466, 467). She could lift her eighteen month old baby who weighed thirty pounds with difficulty (Tr. 468). Plaintiff estimated that she could lift ten pounds without difficulty. She could lift two pounds for two and one half hours (Tr. 469). She could climb two to three stairs (Tr. 470).

Plaintiff continued to have pain and cramping resulting from the bowel reconstruction surgery (Tr. 454, 462-463).

Plaintiff took Albuterol and used inhalers to control her asthma symptoms (Tr. 461). To control the onset of an allergic reaction, Plaintiff avoided dust, fumes and smoke (Tr. 462).

The pain in Plaintiff's lower back radiated to her feet. She described the level of pain as an eight on an ascending scale with ten designated as severe. To relieve pain, she took Percocet, used whirlpool baths with Epsom salt and elevated her feet (Tr. 456, 457, 460).

Plaintiff did no housework, cleaning, laundry or cooking. Those chores were performed by family members or friends (Tr. 457). Plaintiff sat for eight hours each day with her feet elevated while watching television (Tr. 459, 471). Her medication caused lethargy; consequently, she slept eight hours daily (Tr. 474).

   2.   *The VE's Testimony*

Based on a hypothetical claimant of Plaintiff's age, education and past work history, the VE

testified that Plaintiff's residual functional capacity (RFC) suggested light level work. This hypothetical person could not perform Plaintiff's past relevant work as she performed the work as an assembly utility worker for the Jeep Corporation (Tr. 475). The restrictions of not lifting more than twenty pounds and no excessive bending or stooping limited the hypothetical claimant to work as a housekeeping cleaner, inspector or fast food worker. If the hypothetical claimant were required to elevate his or her legs, all of these positions would be excluded from work that Plaintiff could perform. Likewise, if the hypothetical claimant had limited use of his or her right hand, all of the jobs would be excluded (Tr. 476).

B.     *Appeals Council Review.*

The Appeals Council granted Plaintiff's request for review of the ALJ's decision of December 23, 2005. The Appeals Council determined that the ALJ did not evaluate the opinion of Dr. Frederick J. Shiple. III, conduct a detailed credibility evaluation, resolve the sequential evaluation process at step five or remove from the record exhibits relating to Plaintiff's daughter (Tr. 418-419). Thus, ALJ Kramer's decision was vacated.

On remand, the new ALJ was ordered to remove the exhibits that were improperly included in Plaintiff's records, give consideration to the examining source opinion consistent with the regulations, evaluate Plaintiff's subjective complaints and obtain supplemental evidence from a VE to clarify the effect of Plaintiff's assessed limitations on her occupational base and offer Plaintiff an opportunity for hearing (Tr. 419-420).

C.     *Remand Hearing Conducted on September 6, 2006.*

   1.     *Plaintiff's Testimony*

Since the hearing on June 22, 2004, Plaintiff was awarded worker compensation benefits based

on an assessment of 6% disability attributable to carpal tunnel in her right hand (Tr. 487). She was scheduled to receive an increase of benefits every four to five years (Tr. 488).

    2.    *VE Testimony*

Plaintiff's past relevant work as an automobile assembler was considered unskilled, medium work in the Dictionary of Occupational Titles (DOT). It was considered light work as performed by Plaintiff (Tr. 491). A hypothetical claimant of Plaintiff's age, educational level and relevant work history, limited to simple and complex tasks that did not require climbing ladders, ropes or scaffolds, excessive bending and stooping, lifting and carrying no more than twenty pounds occasionally and ten pounds frequently and standing/walking/sitting about six hours in an eight-hour workday, could not perform Plaintiff's past work. This hypothetical claimant could, however, perform work at the light exertional level such as a mail clerk, collator operator and photocopy machine operator. Consistent with the DOT, there would be 1,000 to 1,500 mail clerk jobs, 400 to 500 collator operator and approximately 750 photocopy machine operator jobs, all in the region (Tr. 492). The region was described as all counties within a 75 mile radius of Toledo, Ohio (Tr. 490). There would 50,000 light jobs in the region that would accommodate the hypothetical claimant (Tr. 493).

The hypothetical claimant with carpal tunnel syndrome, tendinitis in the left, right shoulder problems and an inability to lift using the right dominant hand, was restricted to a range of jobs at the light, unskilled level. The jobs that would accommodate this claimant included an assembly machine tender, injection machine molding tender and furniture rental consultant. There were 500 to 750 assembly machine tender jobs, 600 to 750 injection molding tender jobs and approximately 900 to 1,200 furniture rental consultant jobs, all within the region. The total number of light jobs that would accommodate this hypothetical claimant was 10,000. The hypothetical claimant with this profile could

not perform any work at the sedentary level (Tr. 495).

If the hypothetical claimant had asthma, stomach cramps and discomfort, was limited to the use of his or her hand for only five minutes and then one half hour and he or she had back pain radiating down their legs, all of the jobs summarized above would be eliminated (Tr. 496).

### III. MEDICAL EVIDENCE

Dr. Thomas R. Merritt restricted Plaintiff's work duties due to left carpal tunnel syndrome on March 14, 1988 (Tr. 359). On June 12, 1991, he treated Plaintiff after she injured her right thumb while working (Tr. 358). He placed Plaintiff on restricted duty on August 19, 1993. Specifically, he limited her use of air tools (Tr. 357). On March 27, 1997, Plaintiff was injured while working.

In June 1997, Dr. Merritt diagnosed Plaintiff with a condition characterized by tingling, numbness and burning pain in the outer part of the thigh and mild involvement of the right superficial peroneal sensory nerve (Tr. 231).

Dr. Merritt conducted an imaging examination on September 8, 1998 and found that Plaintiff had mild to moderate degenerative disk disease at C5-6 (Tr. 228). During the following February, Dr. Gary Gerard, a neurologist, evaluated Plaintiff's nerve function and discovered no neurodiagnostic evidence of carpal tunnel syndrome or electrodiagnostic evidence of radiculopathy (Tr. 218, 219).

Dr. Jonathan J. Yobbagy interpreted the diagnostic imaging conducted on November 18, 1998 and determined that Plaintiff had a small disc herniation at C6-7 of the cervical spine (Tr. 225).

On May 5, 1999, Clinic Rehab Services reported that Plaintiff had received 23 treatments to relieve cervical strain and tendinitis of the right hand and wrist. Plaintiff was instructed to return on April 22, 1999 to complete the physical capacity evaluation; however, she failed to do so (Tr. 213).

In July 1999, Dr. Shafransky diagnosed Plaintiff with right thoracic outlet syndrome and right

carpal tunnel syndrome. Pending consideration of possible surgical release, Plaintiff was prescribed a pain reliever (Tr. 207). In August 1999, Dr. Shafransky prescribed medication designed to treat the symptoms of gastroesophageal reflux (Tr. 206).

Dr. Robert H. Hartwig opined that Plaintiff had a poor response to the left carpal tunnel release. However, Plaintiff's treatment had been reasonable and necessary for the condition of right carpal tunnel syndrome (Tr. 201). In February 2001, he suggested that Plaintiff use a wrist splint (Tr. 373).

Dr. Thomas E. Smallwood, an internist, authorized refills for a topical ointment designed to treat eczema on February 27, 2001 (Tr. 379).

Plaintiff returned to work on Friday, March 23, 2001, but the job was not within her restrictions. Consequently the increased activity caused right hand pain. On the following Friday, Dr. Smallwood provided a release from work (Tr. 199).

On March 31, 2001, Dr. Bobbijean E. Wood, an emergency medicine physician, treated Plaintiff for muscle spasm with Valium (Tr. 119-120).

Dr. Smallwood prescribed an antibiotic for treatment of sinusitis on August 28, 2001 (Tr. 376).

On September 25, 2001, Dr. Smallwood treated Plaintiff for carpal tunnel syndrome and thoracic outlet obstruction with medication. He also recommended that Plaintiff observe her current limitations (Tr. 196). In October, November and December 2001, Dr. Smallwood addressed symptoms of right earache, vomiting, muscle spasms in the stomach, persistent abdominal pain and heartburn (Tr. 194, 195). Because of her pregnancy, imaging studies were limited; however, the imaging did not show evidence of gallstones. Lab tests indicated that Plaintiff's potassium level was lower than normal (Tr. 126).

Dr. Frederick J. Shiple, III, an orthopedic surgeon, opined on November 6, 2001, that Plaintiff

7

had muscle spasms but there were no studies related to her low back pain, thoracic outlet syndrome or carpal tunnel syndrome. It was his opinion that Plaintiff could return to work with restrictions of no lifting (Tr. 390).

On December 9, 2001, Dr. Susan L. Newton diagnosed Plaintiff with probable spontaneous abortion (Tr. 141).

Results from the esophagogastroduodenoscopy administered on or about December 21, 2001 showed evidence of prominent folds in the duodenal bulb (Tr. 145). The duodenal biopsy showed moderate chronic inflammation (Tr. 153).

On December 31, 2001, Dr. Smallwood surgically repaired a small bowel obstruction (Tr. 168. 169). The pathology results were negative for any malignancies (Tr. 171). Plaintiff's heart and lungs were normal and clear (Tr. 175).

In January 2002, Dr. Donald B. Campbell provided a release for Plaintiff to return to work on January 28, 2002, provided she refrain from bending, stooping and lifting more than twenty pounds (Tr. 158).

Dr. Smallwood diagnosed Plaintiff with asthma, carpal tunnel syndrome and a keloid scar on March 7, 2002 (Tr. 189). It was his opinion that the symptoms of thoracic outlet syndrome appeared in 1998. The progression of this syndrome resulted in restricted motion in the right shoulder and hands and bilateral pain (Tr. 190).

In April 2002, Dr. Smallwood prescribed acne medication. In June 2002, Dr. Smallwood conducted follow-up care for bowel obstruction (Tr. 345). Plaintiff was also treated for abdominal discomfort, cramping and rhinitis symptoms (Tr. 344).

Dr. G. T. Matanguihan, Jr., opined in June 2002 that Plaintiff had bronchial asthma, multiple

joint pain and abdominal enlargement. Plaintiff's heart and lungs were essentially normal (Tr. 234). The manual muscle testing showed that Plaintiff could raise her cervical spine, shoulders, elbows, wrists, hands, fingers, dorsolumbar spine, hips, knees and ankles against maximal resistance (Tr. 238, 239).

Dr. Walter A. Holbrook, a medical consultant, opined on July 19, 2002 that Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds and stand and/or walk about six hours in an eight-hour workday and push and/or pull on an unlimited basis (Tr. 241). Plaintiff should never climb using a ladder, rope or scaffold (Tr. 242). There were no manipulative, environmental, visual or communicative limitations (Tr. 242, 243, 244).

Dr. Frank R. Bruening, an obstetrician and gynecologist, ascertained fetal viability and recommended a nutritional plan sufficient for 26-27 weeks of gestation on July 8, 2002 (Tr. 282, 286). The endocervical evaluations from cells collected on July 11, 2002, showed no significant abnormality (Tr. 303). He noted no gross structural abnormalities on October 13, 2002 (Tr. 284). Dr. Bruening found Plaintiff's hemoglobin level was elevated on November 12, 2002 (Tr. 289). He performed a low transverse cervical cesarean section on October 21, 2002 (Tr. 265).

On February 11, 2003, Dr. Joseph J. Ruskin evaluated Plaintiff for the Worker Compensation Bureau and confirmed that she had carpal tunnel syndrome and that she had reached maximum medical improvement. He further opined that Plaintiff could return to work with limitations (Tr. 392-394).

Plaintiff presented to Dr. Smallwood on April 15, 2003, for a stronger pain reliever to treat back pain, right ear pain and sinusitis (Tr. 343).

Plaintiff was examined by Dr. William D. Padamadan, an internal medicine physician, on September 1, 2004. He diagnosed Plaintiff with mild, intermittent asthma, status post carpal tunnel

9

syndrome, right thigh pain and low back pain. He concluded that Plaintiff had no limitations of physical activities (Tr. 398). In fact, her ability to sit, push and/or pull, lift/carry and stand and/or walk was unaffected by her impairment (Tr. 403-404). He further concluded that the range of motion in Plaintiff's cervical spine, shoulders, elbows, wrists, hands and fingers, hips and ankles was normal (Tr. 400, 401, 402). The range of motion in Plaintiff's dorsolumbar spine and knees was less than normal (Tr. 401-402). Finally, Dr. Padamadan concluded that Plaintiff had no environmental, postural, manipulative, visual/communicative limitations (Tr. 404-406).

Dr. James C. Tanley, Ph. D., administered the Wechsler Adult Intelligence Scale-III (WAIS-III), Wechsler Memory Scale-III (WMS-III), the Woodcock-Johnson Passage Comprehension Test (WJPCT) and Minnesota Multiphasic Inventory-II (MMPI-II) on October 5, 2004 (Tr. 407). The scores derived from the WAIS-III placed Plaintiff in the mild range of mental retardation. The WMS-III score was within the extremely low range. The MMPI-II and WAIS-III test results were deemed invalid due to lack of effort (Tr. 409-410). The WJPCT test scores placed Plaintiff in the second grade equivalent; however, this test, too, was considered invalid due to lack of effort (Tr. 409).

## IV. STANDARD OF DISABILITY

DIB are available only for those who have a "disability." *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007) (*citing* 42 U.S.C. § 423(a), (d); *See also* 20 C.F.R. § 416.920). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* (*citing* 42 U.S.C. § 423(d)(1)(A)).

The Commissioner's regulations governing the evaluation of disability for DIB are found at 20

C.F.R. § 404.1520. The five sequential steps of review follow.

First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. *Id.* (*citing Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990)).

Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. *Id.* A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Id.*

Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. *Id.*

Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. *Id.*

For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled. *Id.* (*citing Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001)(internal citations omitted) (second alteration in original)). If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates. *Id.* (*citing* 20 C.F.R. § 404.1520(a)(4)).

## V. THE ALJ'S FINDINGS

The ALJ made the following findings:

1. Plaintiff met the insured status requirements of the Act through September 30, 2007.

2. Plaintiff had not engaged in substantial gainful activity since September 8, 2001, the alleged onset date.

3. Plaintiff had the following severe medical impairments: thoracic outlet syndrome,

11

       asthma, low back pain, status post carpal tunnel syndrome with surgery on the left hand, edema of her feet and status post abdominal bowel reconstruction. However, none of these impairments or combination of impairments met or were medically equal to one of the listed impairments in 20 C. F. R. Part 404, Subpart P, Appendix 1.

4.    Plaintiff had the RFC to perform work related activities at the light exertional level. Specifically, Plaintiff could lift and carry twenty pounds occasionally, ten pounds frequently, sit for about six hours in an eight-hour workday, stand and walk in combination for about six hours in an eight-hour workday, never climb ladders, ropes or scaffolds and occasionally bend and stoop. Plaintiff was limited to simple and complex, but routine, unskilled work.

5.    Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with or fully supported by the medical record or her course of conduct.

6.    Plaintiff was unable to perform any past relevant work.

7.    Plaintiff was a younger individual aged 18-49, on the alleged disability date. She had a high school education and was able to communicate in English.

8.    Transferability of job skills was not an issue because Plaintiff's past relevant work was unskilled.

9.    There were jobs that existed in significant numbers in the national economy that Plaintiff could perform. Thus, she was not under a disability, as defined in the Act from September 8, 2001, through October 28, 2007.

(Tr. 18-23).

## **VI. STANDARD OF REVIEW**

The federal district court exercises jurisdiction over the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Title 42 U.S.C. § 405(g) permits the district court to conduct judicial review over the final decision in a civil action. *McClanahan v. Commissioner of Social Security,* 474 F.3d 830, 832-833 (6th Cir. 2006). Judicial review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *Elam ex rel. Golay v. Commissioner of Social Security*, 348 F.3d 124, 125 (6th Cir. 2003)

(*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.  *Longworth v. Commissioner Social Security Administration*, 402 F.3d 591, 595 (6th Cir. 2005) (*citing Warner v. Commissioner of Social Security,* 375 F.3d 387, 390 (6th Cir.2004) (*quoting Walters v. Commissioner of Social Security,* 127 F.3d 525, 528 (6th Cir. 1997)).  Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 241 (6th Cir. 2007).

In deciding whether to affirm the Commissioner's decision, it is not necessary that the court agree with the Commissioner's finding, as long as it is substantially supported in the record.  *Id.* (*citing Her v. Commissioner of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999)).  The substantial evidence standard is met if a "reasonable mind might accept the relevant evidence as adequate to support a conclusion."  *Longworth, supra,* 402 F. 3d at 595 (*citing Warner, supra*, 375 F.3d at 390) (*citing Kirk v. Secretary of Health & Human Services,* 667 F.2d 524, 535 (6th Cir. 1981) *cert. denied*, 103 S. Ct. 2478 (1983) (internal quotation marks omitted)).  If substantial evidence supports the Commissioner's decision, this Court will defer to that finding "even if there is substantial evidence in the record that would have supported an opposite conclusion."  *Id.* (*citing Warner, supra*, 375 F.3d at 390) (*quoting Key, supra*, 109 F.3d at 273).

## VII. DISCUSSION

Plaintiff presents four arguments.  First, the AL failed to discuss, weigh or reject Dr. Smallwood's opinions.  Second, the ALJ failed to include specific limitations resulting from post-

13

abdominal bowel reconstruction in the hypothetical question posed to the VE. Third, the ALJ failed to contact Drs. Mayer and Shiple for clarification. Fourth, the ALJ failed to consider the cumulative effects of all impairments.

**1.     THE TREATING PHYSICIAN RULE**

Plaintiff contends that the ALJ's decision is not supported by substantial evidence and the Appeals Council failed to consider all of the evidence of her physical and mental impairments. Defendant argues that the ALJ assigned appropriate weight to the treating physician's opinions.

Plaintiff suggests that Dr. Smallwood is a treating physician, that his opinions are entitled to controlling weight and that in the alternative, the ALJ deprived this Court of meaningful review because he failed to give a reason for rejecting Dr. Smallwood's findings. Defendant concedes that the ALJ did not expressly address Dr. Smallwood's limitations but contends that the failure to discuss the limitations provided by Dr. Smallwood is not reversible error as there is sufficient reasoning stated within the decision to reject Dr. Smallwood's extreme limitations.

The procedural regulation requires the Commissioner to consider all relevant information in the case record. 20 C. F. R. § 404.1524a (Thomson Reuters/West 2009). Reversal is required if the agency fails to follow its own procedural regulations requiring the agency to give good reasons if it fails to give weight to a treating physician's opinions in the context of a disability determination. *Woodard v. Astrue*, 2009 WL 2065781, *3 (M. D. Tenn. 2009) (*citing Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004) (*citing* 20 C.F.R. § 404.1527(d)(2)). An ALJ must give the opinion of a treating source controlling weight if he or she finds the opinion to be well supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with the other substantial evidence in the case record. *Id*.

When the opinion of a treating source is not accorded controlling weight, an ALJ must consider such factors as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source in determining what weight to give the opinion.  *Id.* (*citing Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)).  This requirement of reason-giving exists to (1) enlighten a claimant who knows that his or her physician has deemed him or her disabled, (2) ensure that the ALJ properly applied the treating physician rule and (3) permit meaningful review of the ALJ's application  of the rule.  *Id.* (citations omitted ).

The Commissioner did not order the ALJ to address Dr. Smallwood's opinions.  On remand the ALJ did exactly what he was ordered to do by the Appeals Council.  The ALJ made a cursory reference to Dr. Shiple's opinions as it related to thoracic outlet syndrome, low back pain and right carpal tunnel (Tr. 20).  However, the Magistrate finds that the ALJ should not feel constrained to only consider the limited issues previously presented and, specifically, remanded for further consideration when the prior ALJ's decision was vacated and the ALJ relied on Plaintiff's prior testimony and medical evidence when making a decision.  Plaintiff presented a particularized proof of benefits and she is entitled to consideration of all relevant evidence submitted, particularly the opinions of Dr. Smallwood with whom Plaintiff had a treating relationship from as early as 1996 to 2004.  On remand, the ALJ must consider all evidence presented by Dr. Smallwood and explain the weight attributed to such opinions.  The Commissioner shall conduct this analysis and issue a new decision incorporating such analysis.

**2.    THE HYPOTHETICAL QUESTION.**

Plaintiff contends that the use of pain medication during bouts of abdominal pain precipitates an inordinate amount of rest periods.  The rest periods will result in persistent absenteeism.  The

15

hypothetical questions posed to the VE did not account for the limiting effects of her pain medication.

Defendant contends that the ALJ properly assessed Plaintiff's subjective complaints.

A proper hypothetical question accurately describes the claimant "in all significant, relevant respects; for a response to a hypothetical question to constitute substantial evidence, each element of the hypothetical must accurately describe the claimant." *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994) (*citing Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987)). The ALJ is not obliged to incorporate unsubstantiated complaints into his or her hypothetical questions. *Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118-119 (6th Cir. 1994) (*citing Hardaway v. Secretary of Health and Human Services*, 39 F. 3d 115, 118-119 (6th Cir. 1987)).

Contrary to Plaintiff's assertion, the ALJ did not abuse his discretion to refrain from presenting a hypothetical question to the VE based on unsubstantiated evidence of her symptoms. The hypothetical questions presented to the VE accurately reflect Plaintiff's impairments and limitations as found by the ALJ and supported by substantial evidence in the record. Plaintiff presented to Dr. Smallwood in December 2001 with abdominal pain (Tr. 122-127). Post right hemicolectomy, Dr. Smallwood documented one time when Plaintiff presented to him with abdominal pain (Tr. 345). There is no medically documented evidence that is consistent with persistent bouts of abdominal pain, the need to take pain medication or take a respite after the onset. The ALJ was not required to include Plaintiff's unsupported statements in a hypothetical question to the VE.

### 3.    RE-CONTACTING PHYSICIANS.

Plaintiff argues that the ALJ erred by failing to re-contact Drs. Mayer and Shiple. Dr. Mayer never instructed Plaintiff to stop elevating her feet and Dr. Shiple instructed Plaintiff to refrain from lifting. Both physicians should have been contacted for clarification on the parameters of his opinion.

Then the ALJ should have included these restrictions in the hypothetical presented to the VE.

Under Social Security law, the burden of providing a record complete and detailed enough to enable the Commissioner to make a disability determination, rests with the claimant. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 214 (6th Cir. 1986).  The Commissioner is responsible for re-contacting medical sources when the evidence received from the treating physician or psychologist or other medical source is inadequate to determine whether the claimant is disabled and additional information is needed to reach a determination or a decision.  20 C. F. R. § 404.1512(e) (Thomson Reuters/West 2009).  These sources will be re-contacted if the additional evidence or clarification from the claimant's medical source when the report from the claimant's medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.  20 C. F. R. § 404.1512(e)(1) (Thomson Reuters/West 2009).

Here, Dr. Mayer treated Plaintiff in the "eighties or nineties" on a regular basis and advised her to elevate her lower extremities to alleviate swelling.  None of the subsequent treating sources told her to stop elevating her lower extremities, so she continued to elevate her lower extremities (Tr. 458). Plaintiff failed to present medical evidence from Dr. Mayer or any other treating source to support her proposition.  Even if Dr. Mayer were re-contacted for clarification on the extent of this restriction, the response is neither probative in determining whether Plaintiff is disabled nor needed to reach a disability determination.  Re-contacting Dr. Mayer is unnecessary.

Moreover, the ALJ was not obliged to incorporate Plaintiff's unsubstantiated complaints into the hypothetical questions.

Plaintiff suggests that the ALJ should have re-contacted Dr. Shiple to determine whether the

17

lifting restriction was temporary or permanent. Whether Dr. Shiple's opinion was temporary or permanent, clarification will not resolve a conflict or ambiguity as his opinion was based on Plaintiff's assertions, not medically acceptable clinical and laboratory diagnostic tests. Dr. Shiple conducted a one-time evaluation on November 6, 2001, during which he conducted diagnostic tests for patellar reflex, straight leg raising while sitting, ankle dorsiflexion and plantar flexion (Tr. 389-390). Dr. Shiple's determination of Plaintiff's ability to lift is based on Plaintiff's report that her back pain is worse when lifting more than ten pounds. In contrast, Dr. Padamadan performed an examination in 2004, after which he opined that Plaintiff's ability to lift and/or carry, frequently and occasionally, was not affected by her impairment (Tr. 403). At the hearing in 2004, Plaintiff testified that she could lift her baby who weighed thirty pounds with difficulty and she estimated that she could lift ten pounds without difficulty (Tr. 468-469). Whether the lifting period is temporary or permanent is also not probative in determining whether Plaintiff is disabled.

The ALJ was not required to include Plaintiff's unsupported claim in a hypothetical question to the VE. Contacting Dr. Shiple for clarification is also unnecessary.

**4.    THE CUMULATIVE EFFECTS OF PLAINTIFF'S IMPAIRMENTS.**

Plaintiff contends that if the ALJ considered the cumulative effects of her impairment, a finding that she was unable to sustain gainful employment at any physical demand level would have issued.

The ALJ found:

> 4. The claimant does not have an impairment or combination of impairment that meets or medically equals one of the listed impairments . . . No treating or examining physician or diagnostic or imaging test has reported findings that claimant's severe impairments, either individually or in combination, meet or equal the criteria of any listed impairment, including any impairments listed under Section 1.00 . . .

(Tr. 18-19).

18

In the Sixth Circuit, this statement suffices to show that the ALJ considered the effect of the combination of impairments.  *Booth v. Commissioner of Social Security,* 2009 WL 580312, *6 (N. D. (Ohio 2009) (*citing Gooch v. Secretary of Health & Human Services*, 833 F.2d 589, 592 (6th Cir. 1987) *cert. denied sub nom Gooch v. Bowen*, 108 S. Ct. 1050 (1987) (finding that the ALJ considered claimant's ailments in combination because he noted that "a combination of impairments" did not meet the Listings, and discussed his "impairments"); *Loy v. Secretary of Health & Human Services,* 901 F.2d 1306, 1310 (6th Cir. 1990)).

It is clear from the structure of the ALJ's decision that he properly considered Plaintiff's impairments in combination and the effects of such combination on the physical demands of work (Tr. 19).  The Magistrate concludes that the ALJ's finding is legally sufficient.

## VIII.  CONCLUSION

Based on the foregoing, this case is reversed and remanded to the Commissioner pursuant to sentence four for consideration of all evidence presented by Dr. Smallwood and an explanation of the weight attributed to such opinions.  The Commissioner shall conduct this analysis and issue a new decision incorporating such analysis.

**IT IS SO ORDERED.**

/s/ Vernelis K. Armstrong
United States Magistrate Judge

Date:   September 15, 2009